UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> -v.- <br><br> DWAYNE THOMAS, <br><br>                    Defendant. | 12 Cr. 174-2 (KPF) <br><br> **ORDER** |

KATHERINE POLK FAILLA, District Judge:

Defendant Dwayne Thomas, who is currently housed at the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin"), has moved for compassionate release, in the form of a reduction in sentence to time served, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). In support, Mr. Thomas cites changed medical issues, his conditions of confinement, changed family circumstances, and his rehabilitation while incarcerated. The Government opposes the motion. As set forth in the remainder of this Order, the Court denies Mr. Thomas's motion.

## BACKGROUND

### A.    Factual Background

Both United States District Judge William H. Pauley, who previously presided over this case, and the Second Circuit have written about the charged conspiracy and Mr. Thomas's role within it; this Court incorporates those decisions here by reference. *See, e.g., United States* v. *Russell*, 641 F. App'x 34 (2d Cir. 2016) (opinion affirming conviction and sentence); *Thomas* v. *United States*, Nos. 12 Cr. 174 (WHP) & 17 Civ. 781 (WHP), 2021 WL 199384, at *1 (S.D.N.Y. Jan. 19, 2021) (opinion denying motion pursuant to 28 U.S.C.

§ 2255); *United States* v. *Thomas*, 981 F. Supp. 2d 229 (S.D.N.Y. 2013) (opinion granting in part motion for new trial based on delayed disclosure of exculpatory information).[1] In brief, Mr. Thomas was part of a violent armed robbery crew that operated in the Bronx for several years. (Revised Presentence Investigation Report ("PSR" (Dkt. #188)) ¶¶ 17-33). According to the PSR, Mr. Thomas and his confederates "always carried loaded guns and pointed them at their victims to frighten them." (*Id.* ¶ 17). In addition, they frequently "tortured victims, threatening to drown them in their bathtubs or pour boiling water or oil on them if they did not comply." (*Id.*).

**B.   Procedural Background**

   **1.   The Indictment, Trial, Post-Trial Motions, and Sentencing**

Mr. Thomas and a co-conspirator were initially indicted on Hobbs Act robbery and firearms offenses on February 23, 2012. (Dkt. #7). Superseding indictments were then filed on March 22, 2012, May 12, 2012, and May 24, 2012. (Dkt. #11, 21, 22).

---

[1]   Mr. Thomas was separately prosecuted before United States District Judge Ronnie Abrams for an attempted Hobbs Act robbery that resulted in the murder of the target of the robbery (the "Abrams Case"). After pleading guilty to a one-count indictment, Mr. Thomas was sentenced in the Abrams Case principally to the statutory maximum of 240 months' imprisonment. (15 Cr. 740 Dkt. #68 (judgment)). Mr. Thomas has filed several unsuccessful post-conviction motions in that case, including a motion to vacate his conviction pursuant to 28 U.S.C. § 2255, *see United States* v. *Thomas*, No. 15 Cr. 740 (RA), 2024 WL 3521922 (S.D.N.Y. July 23, 2024), and two motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), *see United States* v. *Thomas*, No. 15 Cr. 740 (RA), 2021 WL 517575 (S.D.N.Y. Feb. 10, 2021), *and United States* v. *Thomas*, No. 15 Cr. 740 (RA), 2025 WL 1580911 (S.D.N.Y. June 4, 2025). This Court observes that many arguments raised by Mr. Thomas in the instant motion were considered, and rejected, by Judge Abrams in her June 2025 decision.

On May 2, 2013, after an eight-day trial, a jury in this District convicted Mr. Thomas of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(b)(1); two counts of robbery, in violation of 18 U.S.C. § 1951(b)(3); two counts of using or carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c); possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and conspiracy to kidnap, in violation of 18 U.S.C. § 1201(a). (Minute Entry for May 2, 2013; Dkt. #106 (transcript of verdict)). The jury acquitted Mr. Thomas of one count of kidnapping and one count of using or possessing a firearm in connection with the charged kidnapping. (*Id.*).

On June 3, 2013, Mr. Thomas moved for a judgment of acquittal and/or a new trial. (Dkt. #108-111). On October 30, 2013, Judge Pauley vacated Mr. Thomas's conviction for one of the robberies and the related conviction for using or carrying a firearm in connection with that robbery. *United States* v. *Thomas*, 981 F. Supp. 2d at 241-43. The Government initially appealed (Dkt. #161), but thereafter withdrew its appeal and declined to retry Mr. Thomas on the two vacated counts of conviction (Dkt. #170).

On October 31, 2014, Judge Pauley sentenced Mr. Thomas principally to a term of 228 months' imprisonment. (Dkt. #189 (judgment)). The sentence included concurrent terms of imprisonment of 144 months for the Hobbs Act conspiracy, robbery, and kidnapping conspiracy charges and 120 months for the § 922(g)(1) firearms charge. (*Id.* at 3). In addition, Judge Pauley sentenced Mr. Thomas to a consecutive term of 84 months' imprisonment on the

remaining § 924(c) firearms charge. (*Id.*). In imposing sentence, Judge Pauley noted that

> the crimes of conviction here are very serious crimes; a number of them are violent crimes and Mr. Thomas was a member of a violent robbery crew that terrorized victims in the Bronx. That crew carried firearms which were used to threaten and frighten residents. Fortunately, no one was killed or seriously injured by any of those weapons, at least in a physical sense. But, a number of the victims were undoubtedly not only terrorized but traumatized by being held at gunpoint or bound to a chair in a basement.
>
> Mr. Thomas was involved in a high-speed car chase with police, he pointed a loaded firearm at an arresting officer before being apprehended and was really a menace to the community.
>
> ***
>
> There is a need for deterrence, a need for a very significant term of imprisonment, but as this Court has observed, no one was shot as a result of his criminal conduct in all of this activity but he is the personification of a violent felon and he has never added anything of value to society. He hasn't even gotten his GED. He is going to have time in prison to think about that and think about whether he will be a constructive member of the country where he grew up when he is deported upon his release.

(Dkt. #196 (sentencing transcript) at 9-10).

Mr. Thomas appealed from his conviction and sentence, but both were affirmed by the Second Circuit. (Dkt. #204 (mandate)).

### 2. The Motion Under 28 U.S.C. § 2255

On February 1, 2017, prior to being sentenced in the Abrams Case, Mr. Thomas filed a motion before Judge Pauley to vacate one of his convictions pursuant to 28 U.S.C. § 2255. (Dkt. #207). Specifically, he sought vacatur of

4

his § 924(c) conviction, arguing that Hobbs Act robbery no longer constitutes a predicate "crime of violence" following *Johnson* v. *United States*, 576 U.S. 591 (2015). (*Id.* at 5). Alternatively, Mr. Thomas sought resentencing on his § 924(c) conviction, claiming that this consecutive sentence should be served prior to his sentences on the other substantive counts of conviction in this case and the Abrams Case. (*Id.* at 14). Judge Pauley rejected both arguments on procedural and substantive grounds in a decision issued on January 19, 2021. *Thomas* v. *United States*, 2021 WL 199384, at *3-4.

Despite the fact that Judge Pauley did not grant a certificate of appealability from his decision, Mr. Thomas filed a notice of appeal out of time. (Dkt. #246). The Second Circuit remanded the matter to this Court (to which the case had been reassigned (*see* Dkt. #248)), which allowed Mr. Thomas to file a late notice of appeal from Judge Pauley's decision. By order dated August 1, 2022, the Second Circuit denied Mr. Thomas's motions for a certificate of appealability, *in forma pauperis* status, and appointment of counsel. (Dkt. #249 (mandate)).

3.   **The Instant Motion**

On March 5, 2025, Mr. Thomas filed tandem motions for compassionate release in this case and the Abrams Case. (Dkt. #250; *see also* 15 Cr. 740 Dkt. #106). As noted, Judge Abrams denied the motion filed in her case in an order dated June 4, 2025. *United States* v. *Thomas*, No. 15 Cr. 740 (RA), 2025 WL 1580911 (S.D.N.Y. June 4, 2025). With respect to the instant motion, the Government filed a memorandum in opposition on May 12, 2025 (Dkt. #254),

5

and Mr. Thomas filed submissions in reply on June 18, 2025 (Dkt. #255), and August 12, 2025 (Dkt. #256).[2]

## DISCUSSION

**A.   Applicable Law**

Under 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018) (the "FSA), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons (the "BOP"), or upon motion of the defendant.  A defendant may move under § 3582(c)(1)(A)(i) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under Section 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing

---

[2]   In his August 12, 2025 submission, Mr. Thomas asks the Court not to consider the conduct underlying the charges of which he was acquitted at trial.  (Dkt. #256).  In Amendment 826, the United States Sentencing Commission amended § 1B1.3 of the United States Sentencing Guidelines to provide that "[r]elevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction."  U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.2 (U.S. Sent'g Comm'n 2024).  While understanding that this provision has not been made retroactive, and that an argument can be made that the conduct is bound up in the offenses of conviction, the Court has nonetheless exercised its discretion to not consider such conduct.

6

Commission."  18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v. *Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021) (summary order).  The Second Circuit has summarized the standards pursuant to which district courts must evaluate compassionate release applications:

> A court deciding a compassionate release motion can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]."  *United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).  But there are three requirements that must be satisfied before a court can grant such relief.  First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities.  Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement).  Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A); *see* [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021)].  Section 3553(a), in turn, lists numerous factors a court must review when imposing a sentence.  These include, as most relevant here, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed ... to provide the defendant with ... correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  Third, the inmate must demonstrate that his

7

> proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed.

*United States* v. *Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); *accord United States* v. *Rodriguez*, 147 F.4th 217, 222 (2d Cir. 2025); *United States* v. *Halvon*, 26 F.4th 566, 570 (2d Cir. 2022). The district court's discretion includes the power to reduce, as well as to eliminate, the remaining term of a defendant's sentence. *See Brooker*, 976 F.3d at 237.

The United States Sentencing Commission amended the policy statement contained at U.S.S.G. § 1B1.13, effective as of November 1, 2023, to provide guidance as to what constitutes extraordinary and compelling circumstances in defendant-initiated (as distinguish from BOP-initiated) compassionate release requests. This amendment "as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release motion, however initiated." *United States* v. *Lopez*, No. 16 Cr. 317-22 (PAE), 2024 WL 964593, at *2 (S.D.N.Y. Mar. 5, 2024).

As relevant here, courts may consider the medical circumstances of a defendant, including whether the defendant is (i) "suffering from a serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," or (ii) "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of

8

serious health deterioration or death. U.S.S.G. § 1B1.13(b)(1)(B)-(C). The amended policy statement also recognizes that family circumstances may constitute extraordinary and compelling reasons, as, for example, "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." *See id.* § 1B1.13(b)(3)(C). Finally, the amended Guidelines recognize that "unusually long sentence[s]" can result in an extraordinary and compelling reason for compassionate release:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b).

In addition to the listed factual circumstances, the amended U.S.S.G. § 1B1.13 contains a catch-all provision that allows consideration of "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). Finally, while the amended policy statement confirms that "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement," it notes that "rehabilitation of the defendant while serving

9

the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* § 1B1.13(d).

As suggested by *Keitt*, the "existence of 'extraordinary and compelling reasons' for a reduction does not mean that a district court must release the defendant." *United States* v. *Madoff*, 465 F. Supp. 3d 343, 349 (S.D.N.Y. 2020). Even if a court finds that a defendant has established an extraordinary and compelling reason for a reduction in sentence, it still must then consider the § 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A)(i); *see also Rodriguez*, 147 F.4th at 222 ("If the court determines that the § 3553(a) factors weigh against a sentence reduction, it may deny the motion on that basis alone." (citing *Keitt*, 21 F.4th at 73)). "The burden of showing that the circumstances warrant a sentence reduction is on the defendant." *United States* v. *Fernandez*, 104 F.4th 420, 427 (2d Cir. 2024) (citing *Jones*, 17 F.4th at 375), *cert. granted in part*, No. 24-556, 2025 WL 1496486 (U.S. May 27, 2025).

**B.    Analysis**

The Government does not dispute, for purposes of this motion, that the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A)(i) has been satisfied as to certain of Mr. Thomas's claims. (*See* Dkt. #250 at 1 (response from Warden); Gov't Opp. 5 (arguing that Mr. Thomas has not exhausted his confinement, medical conditions, or extraordinary rehabilitation claims)). While the Government's exhaustion arguments may well be true as to this subset of claims, given the liberality with which the Court must construe Mr. Thomas's

10

submissions, the Court will consider the merits of all of Mr. Thomas's arguments to determine whether he has identified "extraordinary and compelling reasons" warranting his release. It concludes that he has not.

> 1. **Mr. Thomas Has Failed to Present an Extraordinary and Compelling Reason for Compassionate Release**
>
>    a. **Mr. Thomas's Medical Issues**

The Court begins with Mr. Thomas's claims regarding the conditions of his confinement and their interaction with his medical conditions, including his pre-existing asthma condition and more recent issues with his heart. Proceeding in reverse order, the Court observes, as did Judge Abrams, that Mr. Thomas has failed to present evidence sufficient to demonstrate a "terminal illness"; a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he ... is not expected to recover"; or a "medical condition that requires long-term or specialized medical care" that his detention facility cannot provide, and the absence of which risks his "serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1) (explaining that these factors constitute extraordinary and compelling reasons). *See United States* v. *Thomas*, 2025 WL 1580911, at *3.

"Even assuming [Mr. Thomas's] conditions require long-term or specialized care, the presence of a health condition requiring long-term or specialized care does not by itself establish an extraordinary and compelling circumstance warranting a sentence reduction" without evidence that "the BOP is unable to care for an inmate with those conditions." *United States* v.

11

*Radulescu*, No. 19 Cr. 651 (SHS), 2024 WL 4200388, at *1 (S.D.N.Y. Sept. 16, 2024).  This Court has reviewed with care Mr. Thomas's BOP medical records for the past several years, which records make clear that he is receiving adequate care for his medical conditions on a regular basis.³

More broadly, Mr. Thomas suggests that the conditions of his confinement have resulted in a sentence that was more punitive than Judge Pauley intended when he imposed it.  (Dkt. #250 at 5-7).  It is true that this Court has previously recognized "that courts reviewing motions for sentence modifications have considered the extent to which onerous lockdowns and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences 'harsher and more punitive than would otherwise have been the case.'"  *United States* v. *Hatcher*, No. 18 Cr. 454-10 (KPF), 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021) (quoting *United States* v. *Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020)).  Assuming that this Court's analysis remains viable even after the amendments to U.S.S.G. § 1B1.13, the Court does not believe that Mr. Thomas's personal experiences of being incarcerated during the COVID-19 pandemic amount to an extraordinary and compelling reason for the sentence reduction he now seeks.⁴

---

3       As the Government notes (Dkt. #254 at 5), these records also undermine several of Plaintiff's current claims regarding his medical conditions.

4       Even were the Court to find that Mr. Thomas's detention during the pandemic were an extraordinary and compelling reason, it would nonetheless deny his motion based on its analysis of the factors in 18 U.S.C. § 3553(a).

### b. Mr. Thomas's Parental Issues

Separately, Mr. Thomas notes that his father (who was identified in the Presentence Investigation Report as David Thomas, *see* PSR ¶ 86) has had a stroke that has left him paralyzed. Mr. Thomas indicates that his father has no one to care for him, such that his immediate release is warranted. (Dkt. #250 at 8). The Court is saddened to learn of David Thomas's medical issues. However, Mr. Thomas has failed to demonstrate that he is "the only available caregiver" for his father. To the contrary, the PSR references at least two siblings. (PSR ¶ 87). *See United States* v. *Pilitz*, No. 17 Cr. 53 (JS), 2025 WL 2324218, at *5 (E.D.N.Y. Aug. 12, 2025) (collecting cases where district courts have accepted, and rejected, claims that a defendant is the only available caregiver for a parent); *United States* v. *Sanchez*, No. 01 Cr. 74-2 (PAC), 2023 WL 7103277, at *6 (S.D.N.Y. Oct. 27, 2023) ("While the external commitments of Sanchez's family members might make caretaking difficult, that is 'merely the inevitable circumstances families face when a family member is incarcerated,' not an extraordinary and compelling reason to reduce a sentence." (internal citations omitted)), *aff'd*, No. 23-7777, 2024 WL 4647668 (2d Cir. Nov. 1, 2024) (summary order); *cf. United States* v. *Lisi*, 440 F. Supp. 3d 246, 251-52 (S.D.N.Y. 2020) (finding extraordinary and compelling circumstances where "the Court received evidence from several sources," including from "[the defendant], his mother, and numerous others," indicating that the defendant is "the only available caregiver for his mother," but denying § 3582(c)(1)(A)(i) motion based on analysis of sentencing factors).

### c. Mr. Thomas's Length of Sentence

Finally, Mr. Thomas argues that the combination of his lengthy sentence and several post-conviction developments in the law amount to an extraordinary and compelling reason for compassionate release. The Court acknowledges that Mr. Thomas's aggregate sentence is lengthy, and that he has served more than ten years of that sentence. However, the "changes in the law" to which he refers do not constitute an extraordinary and compelling reason for compassionate release. First, Mr. Thomas cites Amendment 829 to the Guidelines, which clarifies the manner in which age can be considered at sentencing. U.S.S.G., amend. 829. Notably, however, this amendment has not been made retroactive, and thus is excluded from consideration under the amendment. *See id.* ("other than an amendment to the Guidelines Manual that has not been made retroactive"). In any event, Judge Pauley expressly considered Mr. Thomas's age and upbringing at the time of his sentence, and imposed a below-Guidelines sentence in part on that basis. (Dkt. #196 at 10-12).

Mr. Thomas also cites the recent passage of the New York Clean Slate Act, N.Y. Crim. Proc. Law § 160.57, which he argues would have reduced his criminal history category by sealing certain of his prior convictions. As Judge Abrams observed, "The Clean Slate Act provides for the 'automatic sealing of certain misdemeanor and felony convictions,' *Robinson* v. *MSG Ent. Gr., LLC*, No. 23 Civ. 9366 (LJL), 2024 WL 3938361, at *7 (S.D.N.Y. Aug. 26, 2024), *but does not prevent courts from considering these records at sentencing*, *see* N.Y.

14

Crim. Proc. § 160.57(1)(d)(ii)." *United States* v. *Thomas*, 2025 WL 1580911, at *4 (emphasis added)). What is more, a comparison of the Act with Mr. Thomas's criminal history indicates that its effect would be negligible: The Act specifies that misdemeanor convictions are to be sealed three years after, and felony convictions are to be sealed eight years after, the later of the date of sentencing (if no sentence of incarceration was imposed) or the date of the individual's release from incarceration. N.Y. Crim. Proc. Law § 160.57(b)(i)-(ii); *see also id.* ("If the defendant is subsequently convicted of a crime before a prior conviction is sealed pursuant to this section, the calculation of time for such prior conviction shall start upon the same date as the time calculation starts for the subsequent criminal conviction."). Mr. Thomas was released from custody on his two 2004 weapons convictions in October 2006; before the end of eight years, he had been convicted of the offenses in the instant case. The Act would likewise have no effect on his narcotics possession conviction from South Carolina. Thus, the Court has no concern that these subsequent legal developments "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6).

In this regard, Mr. Thomas includes information about his rehabilitative efforts in prison over the lengthy term of imprisonment; these efforts, he contends, show the productive use that he has made of his time in prison, and the inutility of additional time. (*See, e.g.*, Dkt. #250 at 9 ("the government has more than gotten its pound of flesh from him")). These efforts are

commendable, and the Court is pleased to see the productive manner in which Mr. Thomas has spent his time in prison.  As noted, however, rehabilitation is not, by itself, sufficient to constitute an extraordinary and compelling circumstance, though "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  U.S.S.G. § 1B1.13(d); *see also* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").  Here, the Court finds that Mr. Thomas's proffered bases for relief, individually or in combination, do not amount to extraordinary and compelling reasons for his release, and it will not grant his motion based on his rehabilitation alone.  *Cf. United States* v. *Muyet*, No. 95 Cr. 941 (LAP), 2024 WL 2830825, at *5 (S.D.N.Y. June 3, 2024) ("Simply put, the evidence of rehabilitation offered by Defendant does not, alone or in combination with all other relevant considerations, establish extraordinary and compelling reasons for a reduction in his sentence."); *United States* v. *Raposo*, No. 98 Cr. 185 (JPC), 2024 WL 165195, at *9 (S.D.N.Y. Jan. 16, 2024) ("And given the Court's findings that [the defendant's] other arguments do not constitute extraordinary and compelling reasons, even evidence of complete rehabilitation cannot suffice.").[5]

---

[5]  Mr. Thomas adverts to "prosecutorial misconduct" on the part of one of the prosecution team, and claims to have valid arguments for selective and/or vindictive prosecution. (*See* Dkt. #250 at 13-14).  For starters, even if such conduct were true, it would not suffice to constitute a basis for compassionate release.  *See United States* v. *Fernandez*, 104 F.4th 420, 427 (2d Cir. 2024) ("[T]he validity of a conviction or sentence can be

### 2. The Section 3553(a) Factors Counsel Against Compassionate Release

Finally, even if the Court were to find that any or all of Mr. Thomas's proffered bases for compassionate release were "extraordinary and compelling," it would still deny his motion after considering the factors set forth in 18 U.S.C. § 3553(a). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the needs "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C).

For a period of years, Mr. Thomas was involved in a violent armed robbery crew that preyed on individuals unlikely to seek help from law enforcement officers, including drug dealers and traffickers of stolen goods. (PSR ¶¶ 17-33). Mr. Thomas both possessed firearms and used them to terrorize his robbery victims; indeed, his role in the gang was to serve as "stick up man." (*Id.* ¶ 22). On one occasion, Mr. Thomas aimed his gun at a police officer after a high-speed chase. (*Id.* ¶ 21). And as disclosed in his other federal prosecution, on a different occasion, during a different armed robbery,

---

challenged only on direct appeal or collateral review, which have specifically calibrated procedural limitations. Permitting such challenges as cognizable 'extraordinary and compelling reasons' on a motion for compassionate release would circumvent the procedural limitations of direct and collateral review[.]"). Moreover, Judge Pauley previously addressed the Government's discovery deficiencies in his ruling on the post-trial motions. *See Thomas* v. *United States*, Nos. 12 Cr. 174 (WHP) & 17 Civ. 781 (WHP), 2021 WL 199384 (S.D.N.Y. Jan. 19, 2021).

Mr. Thomas pointed a gun at Jermaine Pratt, who fought back.  Mr. Thomas's accomplice then shot and killed Mr. Pratt; in recounting the event, Mr. Thomas blamed Mr. Pratt for fighting back, and thereby not "respect[ing] the jux."  (15 Cr. 740 Dkt. #74 ¶¶ 7-9).

Judge Pauley was well within his rights to sentence Mr. Thomas to a term of imprisonment within the Guidelines range; however, he took into consideration Mr. Thomas's age, family circumstances, and lack of guidance in imposing a below-Guidelines sentence.  For the Court to impose a further reduction in sentence would contravene the Section 3553(a) factors that the Court strove so carefully to balance at the original sentencing.

**CONCLUSION**

For the reasons set forth in this Order, the Court denies Mr. Thomas's motion for compassionate release.[6] The Clerk of Court is directed to terminate the motion pending at docket entry 250, and to mail a copy of this Order to Mr. Thomas at the following address:

>Dwayne Thomas
>Reg. No. 66440-054
>FCI Berlin
>Federal Correctional Institution
>P.O. Box 9000
>Berlin, NH  03570

SO ORDERED.

Dated:  October 8, 2025
        New York, New York

*Katherine Polk Failla*
———————————————————
KATHERINE POLK FAILLA
United States District Judge

---

[6] Given the Court's resolution of the motion, it need not address the degree to which it could reduce Mr. Thomas's aggregate sentence, given Judge Abrams's denial of the analogous motion filed in her case and the largely consecutive nature of the sentence she imposed.